Good morning, Your Honors. May it please the Court, I am Shai Oved, O-V-E-D. I represent the debtor, plaintiff, and appellant, Andy Mahindru, who is also present in the Court. He represented himself in the underlying bankruptcy, the underlying adversary complaint, and at the BAP level, so in case there are some factual issues. Could you try to talk a little louder? The acoustics are not great. We'll do that. I apologize. Like I said, I represent Andy Mahindru, who is also present. He represented himself at the BAP level and at the adversary complaint level. This is a case involving a bankruptcy appeal regarding specific property of the estate. This is one of the most fundamental issues of bankruptcy law in that it involves what happens when a bankruptcy is filed, and that is the automatic stay kicks in. Counsel, I'm having trouble understanding why the bankruptcy court could not retroactively, nunc pro tunc, vacate the stay to allow the recording. The recording seems to have been in perfect good faith, and also the bare legal title that the bankrupt had had absolutely no value. It had zero monetary value, necessarily, because it was merely bare legal title. So I'm having trouble seeing what the problem is. The problem is that the court was clearly wrong when it even got to that conclusion. It was a leap to even find that it was bare legal title. The debtor was living in the house. Otherwise, he wouldn't have filed the bankruptcy in the first place. The debtor was saving his house from foreclosure? Yes. I thought he'd given the house to his friend long ago because the friend had saved it from foreclosure. It turns out that the friendship had obviously been tainted over the course of years, but the document that establishes the transfer or whether legal title or naked legal title was left in the name of the debtor is an instrument, a power of attorney that was executed in 97, but not used until 2001. If you analogize it to a deed in lieu of foreclosure, it's unquestionable... It didn't look like that was the analogy, though. It looked as though the friend who took the power of attorney had some issue with his pension fund, and I don't know if he was doing the right thing, but it has nothing to do with this bankruptcy case. So he left the property in the name of his friend who quit earning a living. So what he ended up doing was maintaining the ownership in the name of the debtor. If a borrower wants to give a bank a deed in lieu of foreclosure and say, here, you can have the property. You think that you would take care of it now, not wait five years. If the bank decided to forbear an extra 30 days, 60 days, five years in this particular case and not take action, the mere act of recording that instrument is an act to enforce its claim, and that's why it's in violation of the automatic stay. If a borrower decides to file a bankruptcy before the bank does what it needs to do to perfect its interest and to gain title, and then it would become the ownership. What is the value of the legal title? That characterization again... Answer the question, would you please? What is the value of the legal title? You heard Judge Kleinfeld said zero. Do you have some other valuation? I think the answer is bare legal title in and of itself could be construed as nothing. However, that was not the particular case here. And it's even more shocking... What is its value then? It's zero without considering any other facts and circumstances. What is the value of the legal title? You say it's zero. What are the other factors? Well, if in fact it is bare legal title. They can cause trouble with it. Is that the value? That's obviously a value or that has some value because someone can continue to protect that portion of their ownership right. You're asking us to prolong this, send it back, have the bankruptcy court say this has got no value and that's the end of it. It's just sort of an imposition on the courts. That's not the exact analysis. This is a home where the debtor resided and you look at the documents and the numerous judicial admissions from the pretrial order where we specifically say he is a secured creditor. His testimony on the stand. I am nothing more than a creditor looking to protect my interest in the money. You get a secured proof of claim both by him and the cousin. We're dealing with, we want our money. We're a creditor. We've admitted that. We've said it throughout the pleadings, throughout the different phases and then the court ignores all of that and says, you know what, I don't want to do the accounting. I don't need to do that. I'm just going to say that there was nothing more than legal title which has been disputed and is not even one of the facts in the pretrial order that we're talking about because that wasn't the issue. I don't see where the dispute is. I'm looking at the bankruptcy appellate panel's decision. It looks as though there are findings of fact that established this. By the bankruptcy court, actually. By the bankruptcy court. That's right. And that's the position that we're taking is the bankruptcy court erred. People make mistakes. I mean, that's. Well, are you saying it clearly erred in its findings of fact? I thought you were just saying it erred as a matter of law. It made a mistake as to that particular fact, and it erred as a matter of law with respect to the consequences of the automatic stay, with respect to property of the estate, and whether it could. What says here, the bankruptcy court finds that Mahindra had bare legal title, and that Bhatia was the equitable owner, and that Bhatia's transfer to Sagar was made without notice of the filing of the bankruptcy. And I didn't see where there was a challenge to the correctness as a matter of fact of those findings of fact, on the ground that they were clearly erroneous. Just an argument about whether the court could do that. What am I missing? I don't think I understand the question, but. The findings of fact stand, unless they're clearly erroneous. And law, that's different. We review law de novo, but we do the law based on the findings of fact. So it looks to me as though on the findings of fact, there's bare legal title, which means nothing but valueless legal title, and that the full equitable title is in Bhatia. So I thought that's where we start our legal analysis. If that's the conclusion, or if that's the interpretation, then certainly the legal conclusion is that the court was clearly erroneous as to that factual finding. Well, there was an earlier factual finding that the bankruptcy judge made, which was that Mahindra intended to give the property to Bhatia in satisfaction of his debt to Bhatia. And I'm familiar with that. That's a factual finding that we cannot overturn unless it's clearly erroneous. In other words, that there's virtually no evidence that would support that. That finding doesn't specify when he wanted to give the title. What does it matter if it's a finding of fact? And it also, it's a finding of fact that the purpose of the power of attorney, this finding number three, was to memorialize the tender of the property to Bhatia. The first issue of the title, and then I'll address yours right after. The first issue was when he wanted to give the property, it was an oral finding. That's what's in the record. That's what's in the transcript. And we know under California law, you can't transfer property orally. So he can always take that back. Yeah, maybe he wanted to give it to him at a certain point. But he went back, moved in the property again. So he had an interest in the property. He had a legal title. He had a possessory title, a possessory interest. And he was there with the other tenants, leasing the property. He had an interest to reinstate the loan. That's what we're dealing with here. So the lease agreement that I saw, the one dated 6-28-97, shows that, let's see. Shows Bhatia as the landlord and Mahindra as the tenant. I'm familiar with that document, too. But I think it identified both of them. If you look at the evidence at the bankruptcy judge, and she listened to their testimony, and she made these findings, basically said that you take all of the historical facts, and then she concludes that all that was left was that Mahindra had a legal title. That was it. But that's where she erred, once again. The lease agreement was done. And when you take the facts from the trial is, Mr. Mahindra was going to be on sabbatical and out of the country. That power of attorney was there for a limited purpose, not used for its intended purpose. In breach of the fiduciary obligations after the power of attorney, not even in deed in lieu of foreclosure. And then you get the foreclosure taking place after the bankruptcy was filed, when the debtor himself can't transfer title, how can a creditor then transfer title? And I see I'm over my limit, and I wanted to reserve a little bit of time to respond. So I can continue to answer questions, but I'm limited. Is it clear from the blue brief that you're claiming that a finding of fact is clearly erroneous? I had thought that the case was about law. When we address the standard for review, we specifically note that findings of facts are viewed under the clearly erroneous standard, and that the legal conclusions are reviewed de novo. I was looking at the statement of issues presented for review. I guess they're kind of general, I'm not really sure. Well, the main issue, again, that we raise is the issue of quieting the title. So let me ask you this. I gather what your bottom line argument is, is that all Basha has is nothing more than an equitable interest to protect his investment and his expenditures in maintaining the property. That's all that he had.  Plus, well, he has more than his secured credit. He's put money into the property, he paid off other... Any junior lender has that right to secure his own interest, which is that of a secured creditor. That's always been the position. And you also claim that, or alternatively, you claim that your client has some sort of equitable interest beyond his legal title. Well, we take the position that the only thing he doesn't have was the legal title, and that it was taken from him in violation of the initial automatic stay. Thank you, Your Honor. By the way, what's the value of that property today? We've had ongoing settlement discussions with the market going up and down. I think it's about $400,000. So that even if he were given his full secured claim, he could reinstate the loan, pay it off, refinance it, and give him every dollar that he would advance in what he initially invested in. Thank you. Thank you, counsel. Hi, Gulshan Bhatia, defendant. Chandni Sagar, the co-defendant, is out of state, couldn't be here. Could you try to talk louder? I can't hear you. Chandni Sagar is out of state, couldn't be here. Plus, all this pertains mostly to me. I was the one who transferred the property to Chandni. I also just mentioned that Mr. Mahindra was trying to protect the property. I had saved this property from foreclosure in 1994, putting money. Evidence is there. I have saved this property from foreclosure in 1996. Evidence is there. And at that time, plus my loan was in default. I was not being paid on that thing. During all this time, property was rented. Mr. Andy Mahindra was collecting rent, protecting it, not meeting his basic obligation of even putting payment for the first trustee. I extended the loan a few more years to help my friend so he can come up with money. And he promised me when he got the loan that he's getting money in one, two years, and he'll pay me off. I never had anticipated I'll be in this situation. I have saved this property as of today five times from foreclosure, five times. Putting about $50,000 from my pocket besides payment. In the 13 years when I first set the property from foreclosure in 1994, when he was the owner, from that time onward to today, Mr. Mahindra has made only payment for one year. And that too, when he was in bankruptcy court, and he was directed by the court to make post-petition payment. He has not made payment in 13 years from his own pocket at all. And when the first time I paid money to stop foreclosure on first trust deed, I directed him to have the tenant send the check to me so I can make payment. I did that religiously for nine months. And then tenth month, the check didn't come. I talked to him, he said he'll make payment. He promised that he'll make payment. I had made payment that time, the brief state that thing. And then I find out after one year or eight months, he had not made a single payment. All the money he collected from rent was again in his pocket. And again, 1996, I had to come with $6,000 to the property. Now, he says Mr. Mahindra was living in the property. After he came from jail in year 2000, June of, mere June of 2000, he came to my home, surprised me. I had not seen him for the last one and a half year. And he broke down, cried, apologized, and begged that he wants to start his life all over again. He had made a mistake in life, and he has ruined everything, and he has just spoiled his friendship with everybody, including his family. The sister who gave him place to live, he was living there free of rent before he was jailed. But he did certain things to her daughter-in-law, and he was jailed. We came, we didn't know about that part, and he cried he want help to start life all over again. At that time, I said, if you want money from me, I will not give you. I have suffered enough. What else we can do for you? He says, can I move in the property as a tenant to live there, and I can start my life all over again, I start working. So, on that assumption, promise, I told him, yeah, get the tenant out from there, who was not paying rent anyway, and he was friend also. And I will let you stay there for three months rent-free, and then start paying rent. He was there ever since rent never came. And I want to point out two statement under oath. In his chapter seven bankruptcy, 341 committee meeting, under oath, I asked him question. Evidence is there, that didn't you give this property to me? His answer is yes. And didn't you give power attorney for that purpose? Answer is yes. Again, under oath, in the deposition, before the trial started, my attorney called me in our office, and he was again asked two questions. And the only reason, and again, the evidence is there, and the only reason you gave Mr. Bhatia power attorney is so that he can take our property because of your inability to make payment. His answer is yes. And she has second question, and when you moved in the property in June 2000, you promised to make him rental payment after initial three months. His answer is yes. I give it L, which he signs a tenancy agreement on my behalf with his friend, Ren Fossey, he refers me a landlord. Mr. Mahindra, who is not in my ownership, is calling me landlord for this property. In the power attorney, he has given me all the power which a person needs to treat the property as his own. Again, when he moved the property free of rent for three months, during that period, he wrote me a letter, and the note says, which is Exhibit N, I wish I could attach rent check, but with God's grace, it'll happen soon. He's thinking about, talking about sending me rent check. If I'm not the owner, why he wants that? Again, 341, a transcript is there, Exhibit R, where he admits that he gave the property to me. And the deposition, Exhibit T, again, under oath, he admits that this was the case. So, I don't know what kind of story they're telling, talking about the property of a state. Judgment clearly says that at the time of the transfer, he only had their title property. I was the owner of the property. So, the statement that Andy moved in the house to save the property for foreclosure, that's absolutely wrong. He has never made payment other than when court directed him. There, too, there, too, he cheated the court. The judgment came in March of 2004. He stopped making payment December of 2003. And I got the property after evicting him in July of 2004. By that time, property was again in foreclosure. And I had to, again, send over $12,000 to save the property. It's a case like, is my child, as long as child is making money, is my child, my child is sick, hungry, change diapers, something? No, I have no interest. In 13 years, only 10 or 12 payments he made, and my record is full of all the payment, cancel, check. I don't know how in the world he can think of property was his. And the mistake I made was to let him come on the property, I listened to his plea, and he tried to be kind to him. He said, I lost everything, and nobody wants to help me, you're the only hope. And I let him move in the property as a tenant. And now he's claiming that he was there to save the property. Has never done it. Five times foreclosure, I save the property. Thank you, counsel. You exhausted your time, but go ahead and take 30 seconds. If I could just point out that the lease that is referenced identifies both Mahindra and Bhatia as the landlords, not Mahindra as a tenant. With respect to everything else that has been said in protecting and He saved the house to protect his security interest and not being wiped out from a foreclosure sale from somebody ahead of him. So the relationship is that of a debtor and creditor. I think with the bail bond, that was behind him. He was third and the bail bond was fourth. I stand corrected. That was one example where that was someone that was junior to his interest. But that would again only show that he maintained an interest in the property. Otherwise, he couldn't have borrowed against the money or put up the house for collateral. Again, we're dealing with a series of debtor and creditor relationships. And we're not here to address breaches of contract, because those would have been discharged in the first Chapter 7 case. We're here dealing with only quieting title and restoring the parties to their respective position. If I can just quote one page. Make it quick and wrap up. I'm going to quote one issue from his testimony at the trial. I said earlier, and I'm saying again, my interest in the property is only to the extent of me getting my money. That's all. That's the issue. Getting his money. We need to remand so that the accounting can be completed. Thank you, counsel. Mahindra versus Baria is submitted. We're adjourned until 9 AM tomorrow.
judges: Noonan, Kleinfeld, Paez